## John Williams v. The State.

1. Robbery.— By the Penal Code the offense of robbery consists in the fraudulently taking from the person or possession of another any property, either "by assault, or by violence and putting in fear of life or bodily injury," with intent to appropriate the same to the use of the taker. When the taking was by assault, there need have been no intimidation; but if the taking was by violence there must have been intimidation to make the offense robbery.

2. Same.— If, as in the present case, the indictment charges that the taking was effected by *assault* and putting in fear of life or bodily injury, and does not charge that it was effected by *violence* and putting in fear of life or bodily injury, the assault must be proved in order to wrrant a conviction. Upon such an indictment a conviction is not warranted by proof that the defendant took the property by threatening to arrest and thus intimidating the owner into surrendering it.

Appeal from the District Court of Smith.    Tried below before the Hon. John C. Robertson.

The opinion of the court sufficiently shows the indictment, and states the evidence in full. A term of three years in the penitentiary was the punishment allotted the appellant. It is to be inferred from the evidence that Calvin Johnson, the victim of the appellant's enterprise, was a negro.

By the charge of the trial court the jury were instructed as follows:

"The taking must be fraudulent and with intent to appropriate the thing taken to the use or benefit of the person taking. It must have been taken by assault or by violence and putting in fear of life or bodily injury. The injury intended by violence may be constraint or arresting a person without authority, or a sense of shame or other disagreeable emotion of the mind. It is for you to decide in this case whether the said Calvin Johnson was put in fear or constraint by the defendant, and to determine this you are authorized to look to what capacity

the defendant acted in,— if as an officer or not; if as an officer, whether as such he put the said Calvin Johnson under constraint or fear of personal injury, and thereby took the money as alleged; and all the other evidence in the case; and decide under this charge whether the defendant is guilty of robbery or not guilty," etc.

At the request of the defense the court gave a further instruction to the jury, but it also authorized them to convict whether the taking was by assault or by violence and putting in fear.

*C. G. White,* for the appellant.

*H. Chilton,* Assistant Attorney General, for the State.

HURT, J. The appellant Williams was convicted of robbing one Calvin Johnson of five dollars. The indictment charges that the appellant Williams did make an assault upon one Calvin Johnson, and then and there put him in fear of life and bodily injury, and five dollars in silver coin money, from the said Johnson's possession and against his will, then and there unlawfully, fraudulently, violently and with force and arms did seize and take," etc.

The Code defines robbery as follows: "If any person, by assault, or by violence and putting in fear of life or bodily injury, shall fraudulently take from the person or possession of another any property, with intent to appropriate the same to his own use, he shall be punished by confinement in the penitentiary not less than two nor more than ten years." Under the Code it will readily be seen that to constitute robbery the taking of the property must either be by assault or *by violence and putting in fear of life and bodily injury.* (We are not treating of the other elements.) If the property is taken by assault, the person from whom taken need not be put in fear of life or bodily injury. But if by violence, the

person from whom the property is taken must be put in fear of life or bodily injury. It follows, therefore, that an indictment which charges the taking by *assault* need not allege that the person assaulted was *put in fear of life or bodily injury*. On the other hand, when the charge in the indictment is based upon the other clause or phase, the indictment must allege that the taking was by violence *and* putting in fear of life or bodily injury.

We are aware that in *Wilson* v. *State*, 3 Texas Ct. App. 63, it was held that in either event, whether by assault or by violence, there must be a putting in fear of life or bodily injury. This opinion was under the statute before the change. The statute then read, "If any person by assault or by violence and putting in fear of life or bodily injury." The difference being that in the former there was no comma after assault.

The indictment in this case charges the assault and putting in fear of life and bodily injury, but does not charge violence and putting in fear. Hence the evidence must support the charge of an assault to sustain the indictment.

Do the facts support the charge? The evidence is as follows: Green McArver, witness for the State, says: "I was in Troupe, Smith county, Texas, some time in January last. I saw the defendant there, and also Calvin Johnson. The latter had sold a horse there that day, and he came along by defendant, who was sitting down on the railroad, when defendant said to him, 'Young man, you have got yourself into quite a scrape if you only knew it, by selling that horse here this evening without license. I am town marshal here, and it is my duty to arrest you and put you in the calaboose, and then take you before the mayor, and to-morrow morning take you to Tyler jail.' Defendant then figured or pretended to figure a little on a book he had with him, and then he said: 'but, young man, if you pay me five dollars you

can go and I will not bother you; otherwise I will have to arrest you and put you in the calaboose and take you to Tyler jail to-morrow.' Calvin Johnson then pulled out five dollars and gave to defendant, and defendant told him to go down to the store and get his budget and come back up there; which Calvin did. When Calvin came back with his bundle defendant said: ' Young man, that five didn't quite settle up what is against you. I've figured up and find it will take one dollar more to settle it up straight; so you had better pay this, or I will put you in the calaboose and take you up to Tyler jail to-morrow.' And Calvin then paid him one dollar more. Defendant then said to Calvin: ' Now take the railroad here and go on to Jacksonville, and if anybody asks you about Troupe, tell them you don't know anything about Troupe.' Calvin then went on down the railroad in the direction of Jacksonville. All this occurred in Smith county, Texas. I did not see defendant use any violence on said Calvin, nor offer to do so, nor make any gestures like he was going to do so. The money was delivered up to him by Calvin, as I said, on his threatening to arrest Calvin and put him in the calaboose."

Calvin Johnson corroborated Green McArver in every material particular, adding: "I had sold my horse and was not used to town affairs, having been raised in Georgia and in the country. When defendant halted me and told me that I had got myself into trouble (as stated by Green McArver), I became scared and very uneasy although I was satisfied that I had done nothing to be arrested for, except that it might be for selling my horse in town. I thought he was marshal of the town, and would put me in the calaboose, and carry me to Tyler jail, 20 miles distant, if I did not let him have some money,— the amount he demanded, five dollars. He first got five silver dollars United States of America coin, worth five dollars, from me against my will and consent.

I let him have it because I was afraid not to; I was mighty scared; thought he was going to imprison me; would have given him all I had if he had demanded it of me. After getting the money, defendant told me to strike out down the railroad to Jacksonville, and not stop; never to let anybody know that I had ever been in Troupe. I started, and on the way, at the section house, learned from some white men that defendant was not marshal of Troupe. I then turned back, and, being cited to the mayor, went to him and informed him against the defendant and had him arrested. He was not marshal, as I afterwards learned, but at the time I thought so. He never hit me or in any way put his hands on me, or tried to hit me, but threatened and frightened me. I did just as he ordered me. He was a stranger to me at that time, but I have since learned his name to be John Williams, and would know him anywhere, and is the man now on trial."

This evidence fails completely to show an assault; consequently the charge in the indictment is not supported by the proof. But let us suppose that the indictment had alleged that the money was taken by "violence and putting in fear of life or bodily injury," would these averment be sustained by the above facts? There was certainly no fear of loss of life; was there of bodily injury? What is meant by bodily injury? Most evidently it means an injury to the person,— to the body.

Proceeding then upon the supposition that the indictment contained the proper allegations to admit evidence of "fear of life or bodily injury," still we are of the opinion that the evidence in this case would not support these allegations.

If what has been written be a correct solution of the Code defining robbery, a discussion of the other points raised in the brief of appellant is unnecessary; for the errors in the charge of the court will very clearly appear,

tested by the exposition of the law of robbery, as above set forth.

The verdict of the jury not being supported by the evidence a new trial should have been granted. The judgment is reversed and the cause remanded.

*Reversed and remanded*